THE HONORABLE BARBARA J. ROTHSTEIN

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

IN RE AMAZON PRIME VIDEO LITIGATION

Case No.: 2:24-cv-00186-BJR

**DEFENDANT AMAZON.COM, INC.'S REPLY IN SUPPORT OF ITS MOTION TO DISMISS AMENDED CONSOLIDATED CLASS ACTION COMPLAINT**

**ORAL ARGUMENT REQUESTED**



FENWICK & WEST LLP
401 UNION STREET, 5TH FLOOR
SEATTLE, WASHINGTON 98101

## INTRODUCTION

Plaintiffs' Opposition overlooks a key fact: Plaintiffs are Amazon Prime subscribers, not Prime Video Subscribers. As such, Plaintiffs' relationship with Amazon is governed by the Prime Terms, which incorporate the Prime Video Terms ("PV Terms") by reference. As Prime members, Plaintiffs have access to Prime Video as one of a flexible suite of benefits. Plaintiffs now concede that they still have complete access to Prime Video—just as they always have—and they pay nothing more for their Prime memberships than they did before the introduction of ads to Prime Video. Plaintiffs also concede that, if Amazon chose to modify or remove the Prime Video benefit, it has the contractual discretion to do so under the Prime Terms, as the Court already ruled. *See* Declaration of Brian D. Buckley ("Buckley Decl.), Ex. A at 2 (Prime Terms);[1] Order (Dkt. 70) at 6-7. Those undisputed facts should put the issue, and this case, to bed for good. Plaintiffs are getting exactly what they bargained for, at the price they agreed to pay.

To avoid dismissal, in their Opposition Plaintiffs engage in a series of rhetorical contortions to manufacture a breach of the PV Terms. But in doing so, they rephrase or merely repeat arguments that the Court already rejected. Plaintiffs claim that the PV Terms trump or supersede the Prime Terms. They do not. There is no inconsistency between the two sets of terms, and therefore nothing to trump. But even if there were, the Prime Terms control Plaintiffs' Prime membership and authorize Amazon to modify Prime benefits at its discretion.

Even if the PV Terms could override the Prime Terms, Amazon did not breach the PV Terms either. Plaintiffs renew their argument that Section 6(d) of the PV Terms is an exhaustive list of Amazon's rights to change the Prime Video service, which (Plaintiffs say) does not include introducing a fee to avoid ads. But the Court already ruled that Section 6(d) is *not* exhaustive and does *not* preclude Amazon from exercising its discretion to change the service. Plaintiffs also argue, again, that introduction of the ad-free fee was a mid-subscription "price increase" in violation of Section 6(e) of the PV Terms. But the Court rejected that argument too, finding that Plaintiffs were not required to pay anything more for their Prime memberships and still enjoy full

[1] Plaintiffs do not dispute that all of the exhibits to the Buckley Declaration are properly incorporated by reference into the AC and/or subject to judicial notice.

access to Prime Video. And Plaintiffs' WCPA claim fails for the same basic reason, because it is not unfair or deceptive to exercise a contractual right.

Plaintiffs have now tried and failed three times to plead viable claims, and their theories cannot be rehabilitated through further amendment. The case should be dismissed with prejudice.

## ARGUMENT

### I. Amazon Did Not Breach The Prime Terms.

Plaintiffs cannot dispute that the Prime Terms give Amazon the right to "add or remove Prime membership benefits" in its "sole discretion" and to "change … any aspect of Prime membership." Buckley Decl., Ex. A at 2; *see also Marquez v. Amazon.com, Inc.*, 69 F.4th 1262, 1267 (11th Cir. 2023); *In re Amazon Serv. Fee Litig.*, 705 F. Supp. 3d 1255, 1268 (W.D. Wash. 2023) ("*Service Fee I*"). Access to Prime Video is one such Prime benefit that Amazon can change in its sole discretion under the Prime Terms. *See* Buckley Decl., Ex. B. The Court agreed, concluding that Amazon's introduction of the ad-free upgrade "constituted a change in membership benefits, which Amazon is authorized to make at any time." Order at 7-8.[2]

Plaintiffs now argue that "Amazon did not 'remove' any Prime 'benefit'" because "[t]he agreements frame the 'benefit' here as the entire Prime Video Service, not that it did not feature ads," and "Prime Video was never taken away." Dkt. 77, Opposition ("Opp.") at 6-7. To begin, the terms do not "frame" or guarantee Prime Video (or any other benefit) as a Prime benefit. *See* Buckley Decl., Exs. A, C. More importantly, Plaintiffs' argument dooms their breach claim: Plaintiffs continue to access Prime Video even after the ad-free upgrade, and they now acknowledge that Amazon did *not* promise them ad-free access. *See* Order at 6 (Amazon "never promised Prime subscribers—in writing or otherwise—that its streaming service was, or would remain, ad-free."). It is axiomatic that Amazon cannot breach a contract by taking away what it was never contractually obligated to provide in the first place, i.e., ad-free access to Prime Video.

[2] Citing no authority, Plaintiffs argue that the provision granting Amazon the "discretion [to] change … any aspect of Prime membership" authorizes Amazon to change the contract only—despite the plain language stating otherwise—because it appears under the "Agreement Changes" section. Opp. at 7. But "captions 'should never … be taken to override the intention of the parties … as shown by the provisions and clauses inserted thereunder." *Stanbury Elec. Eng'g, LLC v. Energy Prods.*, No. C16-0362JLR, 2016 WL 3255003, at *4 (W.D. Wash. June 13, 2016) (quoting *Stanley v. Safeco Ins. Co. of Am.*, 109 Wn.2d 738, 747 P.2d 1091 (1988)).

*See Haywood v. Amazon.com, Inc.*, No. 2:22-cv-01094-JHC, 2023 WL 4585362, at *4 (W.D. Wash. July 18, 2023) (dismissing breach claim because plaintiff "identifies no provision … that imposes a contractual duty that Amazon purportedly breached").

Plaintiffs alternatively argue that if ad-free access were a Prime benefit, Amazon did not "remove" that benefit but "simply charged more for it." Opp. at 7. The Court has already rejected that very argument, explaining that "[i]t would be an anomalous result (and one not supported by the language in the contracts) to hold that while Amazon could remove a benefit, it could not offer subscribers the option to purchase one without violating the parties' agreements." Order at 9.

Recognizing that the Prime Terms doom their claims, Plaintiffs claim that Section 6(d) of the PV Terms is "specific" and should trump the "general" Prime Terms. *See* Opp. at 4, 8. But this contract-interpretation principle "only applies when the terms are inconsistent." *Regence Blueshield v. BNY Mellon Bank, N.A.*, No. C09-0618RSL, 2010 WL 11527259, at *2 (W.D. Wash., 2010); *Seattle-First Nat'l Bank v. Westlake Park Assocs.*, 42 Wn. App. 269, 274, 711 P.2d 361 (1985) (rejecting application of the principle where "language of the contract … is not in conflict"). As the Court noted, the terms are fully consistent: "both the Prime Terms and the Video Terms repeatedly reserve to Amazon the right to modify, add, or remove benefits associated with memberships in Amazon Prime and in Prime Video specifically." Order at 6-7; *see also* Dkt. 75, Motion to Dismiss ("Mot.") at 10; *see generally Dental Health Servs. v. Regulatory Ins. Advisors*, No. C20-1591-JCC, 2020 WL 7385735, at *2 (W.D. Wash. Dec. 16, 2020) ("every effort should be made to harmonize terms that, in isolation, might appear to conflict.").

But even assuming that the terms conflict, Plaintiffs got it precisely backwards. With respect to Amazon's rights and obligations as to Prime members and whether "Amazon Prime subscribers … had bargained for one year of Amazon Prime with ad-free Prime Video" (AC ¶ 6)—questions at the heart of Plaintiffs' claims—the Prime Terms ***are the specific terms***. As Plaintiffs acknowledge, the PV Terms are not specific to Prime members because they "also governs non-Prime members' service." Opp. at 9. Indeed, the PV Terms generally address "all users" of the Prime Video service (*id.*), broadly encompassing not only "Subscription Digital Content" (which users can access through a Prime membership ***or*** through a "standalone video subscription" not at

issue), but also "rent[al] Digital Content for on-demand viewing" and "Digital Content [accessible] on a free, ad-supported or promotional basis." Buckley Decl., Ex. C § 4(a). The PV Terms contain other provisions that have nothing to do with Prime, such as the use of compatible devices, geographical restrictions on content, and playback quality. *See, e.g.*, *id.* §§ 2, 3, 4(k). By contrast, the Prime Terms apply specifically to the Prime membership, laying out its benefits and limitations and Amazon and Prime members' "respective rights and obligations." Buckley Decl., Ex. A at 1.

Plaintiffs insist that they need only advance "one reasonable interpretation" of the contracts to survive. Opp. at 10. They fail to do even that. The Court should reject Plaintiffs' unreasonable interpretation: that a single sentence in the PV Terms supersedes and renders meaningless the Prime Terms that repeatedly gives Amazon the right to remove or change Prime benefits. *Hold Sec. v. Microsoft Corp.*, No. C23-899, 2024 WL 1407291, at *5 (W.D. Wash. Apr. 2, 2024) ("[C]ourts should not adopt a contract interpretation that renders a term ineffective or meaningless."); *see generally Whitman v. State Farm Ins. Co.*, No. 3:19-cv-06025-BJR, 2022 WL 4081916, at *3 (W.D. Wash. Sept. 6, 2022) (contract interpretation is generally a question of law).

## II. Amazon Did Not Breach The PV Terms.

Even if the PV Terms somehow trump the Prime Terms, Plaintiffs still cannot state any breach by Amazon. Plaintiffs argue as before that the first sentence of Section 6(d) "limit[s] modifications" of the Prime Video service to the five enumerated scenarios and that Amazon breached that provision by introducing the ad-free upgrade. Opp. at 4, 11. But the Court has already rejected this argument, noting that the final sentence of Section 6(d) gives Amazon "the right to suspend, or discontinue the Service, or any part of the Service, at any time and without notice." Buckley Decl., Ex. C at 7. As the Court concluded, this is an "unequivocal statement [that] removes any doubt that in this context, the meaning of the word 'may' (as in 'Amazon may modify the Service') is permissive rather than restrictive." Order at 12; *see also* Mot. at 8.

Plaintiffs fail to address the Court's ruling; they instead recite cases that either confirm that the Court got it right or that are wholly inapposite. *See* Opp. at 5-6. In *Plintron Techs. USA, LLC v. Phillips*, the court explained that the "interpretation of the word ['may'] depends on how it is used in context," and the "ordinary meaning of 'may' suggests ***permission or possibility, not***

***requirement***." No. C24-93 MJP, 2024 WL 1557661, at *2 (W.D. Wash. Apr. 10, 2024) (emphasis added). Applying those principles, the court concluded that the clause providing that the parties "may then submit to binding arbitration any claims" "does not mandate the parties resolve their disputes by arbitration." *Id.* at *3. Similarly, in *Allen v. Travel Guard Grp. Inc.*, the court ruled that the provision stating that claims "'may' be settled by arbitration, if mutually acceptable" merely "***permit[s]*** the parties to arbitrate their claims." 683 F. Supp. 3d 1164, 1171 (W.D. Wash. 2023) (emphasis added). Like in *Plintron* and *Allen*, the word "may"—especially when read in proper context with the rest of Section 6(d)—conveys that Amazon has discretion to act as exemplified in the five enumerated scenarios, but the possibility is left open for Amazon to act in other ways as to all or "any part of" the service. Buckley Decl., Ex. C at 6-7. Plaintiffs' other two cited cases, *LL Liquor, Inc. v. Montana*, 757 F. App'x 591 (9th Cir. 2018) and *In re Centurion Props. III, LLC*, 2009 WL 10812352 (Bankr. E.D. Wash. Apr. 30, 2009), never even address the meaning of the word "may."

Plaintiffs argue that the first sentence of Section 6(d) is more specific than and should "override" the so-called "catch-all clause" in the last sentence (Opp. at 9), which gives Amazon the right to "suspend, or discontinue … any part of the Service, at any time and without notice" (Buckley Decl., Ex. C at 7). But Plaintiffs' reading would require the Court to conclude that the last sentence of Section 6(d) is meaningless. That absurd result is contrary to law and the basic principle (which Plaintiffs invoke elsewhere but conveniently ignore here) that a contract "should be read to give effect to all its provisions and to render them consistent with each other.'" *Dental Health Servs.*, 2020 WL 7385735, at *2; *Nishikawa v. U.S. Eagle High, L.L.C.*, 138 Wn. App. 841, 850 (2007) (courts' "goal is to interpret the agreement in a manner that gives effect to all the contract's provisions"); *see also Snohomish Cty. Pub. Transp. Benefit Area Corp. v. FirstGroup Am., Inc.*, 173 Wn.2d 829, 840 (2012) ("An interpretation of a contract that gives effect to all provisions is favored over an interpretation that renders a provision ineffective, and a court should not disregard language that the parties have used").

Even if the Court were to consider Plaintiffs' unreasonable interpretation of Section 6(d), Plaintiffs still plead no breach. The AC contains no factual allegations to suggest that the ad-free

upgrade was *not* used, for example, "to support maintaining quality and quantity of content included in the Service." *See* Mot. at 9; Buckley Decl. Ex. C at 6. In the Opposition, Plaintiffs counter with their suspicion that Amazon was motivated to "generate new revenue." Opp. at 11; *see also* AC ¶ 39. But suspicion masquerading as facts cannot "raise a right to relief above the speculative level." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) ("[T]he pleading must contain something more … than … a statement of facts that merely creates a suspicion [of] a legally cognizable right of action.") (citation omitted).

Nor have Plaintiffs alleged any "price increase" in violation of Section 6(e) of the PV Terms. As the Court ruled, Plaintiffs "have failed to demonstrate that Amazon's actions are properly characterized as a price hike" because "what occurred was a change in benefits, which the contracts permit." Order at 10. Trying to avoid the same result, Plaintiffs narrowly construe the Court's ruling as "based on an understanding that Plaintiffs had never been entitled to commercial-free programming to begin with, and that Amazon had unfettered discretion to modify its terms." Opp. at 11. But Plaintiffs ignore that the Court also ruled that "the distinction between a benefit removal and a price increase … is repeatedly reinforced in the contracts themselves" and that "the introduction of commercials to Prime Video alone did not result in any out-of-pocket price increase whatsoever." Order at 8-9. As Amazon explained in the Motion, the price of the annual Prime membership remained the same after the ad-free upgrade, and no Plaintiff paid a single cent more to continue enjoying Prime Video and other Prime benefits. Mot. at 9-10. Plaintiffs could freely decline the upgrade (as five did), or voluntarily pay for an ad-free experience to avoid the "annoyance" of ads (as two did). AC ¶¶ 44-55.

Plaintiffs argue that "they were entitled to continued access to the Prime Video Service they had purchased," which "had been ad-free for 12 years consistent with Amazon's advertising." Opp. at 11. Every part of that argument is false. As the AC shows, each Plaintiff purchased an "annual Prime subscription," *not* "access to the Prime Video Service." AC ¶¶ 41, 43, 45, 47, 49, 51, 53. What Plaintiffs bargained for is a suite of Prime benefits (*see, e.g.*, *id.* ¶ 2; Buckley Decl., Ex. B), which Amazon can add, remove, or change in its sole discretion under the Prime Terms. Amazon did not advertise "for 12 years" that ad-free access would be part of that bargain, as

Plaintiffs misleadingly suggest. Instead, Plaintiffs could *only* find a 12-year-old press release where Amazon referred to Amazon Instant Video as "commercial-free." AC ¶ 28. And Prime Video included limited advertisements even before Amazon offered the ad-free upgrade in 2024. *See, e.g.*, Buckley Decl., Ex. C § 4(l) (audience measurement information shared with "advertisers"), Ex. D (Email Notice) at 3 (certain content "will continue to include advertising").

Plaintiffs allege no promise by Amazon, contractually or otherwise, that Prime Video was or will remain ad-free for Prime members. All Plaintiffs can muster is their unreasonable "understanding that Prime would include ad-free Prime Video service for the duration of her subscription." AC ¶¶ 41, 43, 45, 47, 49, 51, 53. The Court should not "credit [Plaintiffs'] subjective expectation to rewrite the contract term" because a court "cannot … create a contract for the parties which they did not make themselves, nor can the court impose obligations which never before existed." *Storey v. Amazon.com Servs. LLC*, No. C23-1529-KKE, 2024 WL 2882270, at *4 (W.D. Wash. June 7, 2024). There is thus no basis for Plaintiffs' "price increase" theory.

## III. Amazon Did Not Breach The Implied Covenant.

Plaintiffs argue that Amazon has "limited discretion to modify" Prime Video and must "exercise its discretion 'reasonably.'" Opp. at 12-13. But the Court already ruled that the contracts "clearly grant[] Amazon such broad authority to modify its service;" Amazon thus "had no duty that was required to be performed in good faith." Order at 11-12 (quoting *Service Fee I*, 705 F. Supp. 3d at 1269). Neither of Plaintiffs' cited cases offers any basis to disturb the Court's ruling. In *Smartwings, a.s. v. Boeing Co.*, there was no suggestion that the implied covenant claim would contradict the express terms of the contract. No. C21-918, 2022 WL 579342, at *6 (W.D. Wash. Feb. 25, 2022). In *Skansgaard v. Bank of Am., N.A.*, a key contract term was ambiguous, such that the reasonableness of the defendant's actions was a factual question. 896 F. Supp. 2d 944, 948 (W.D. Wash. 2011). Unlike *Smartwings* and *Skansgaard*, multiple provisions of the Prime Terms and the PV Terms authorize Amazon to change or discontinue services. *See, e.g.*, Buckley Decl., Ex. A at 2; *see also* Order at 6-7 (Amazon contractually authorized to "modify, add, or remove benefits associated with memberships in Amazon Prime and in Prime Video specifically"). And as already explained, Section 6(d) of the PV Terms is permissive; it does not limit Amazon's

authority to change "any part of the Service, at any time and without notice." Buckley Decl., Ex. C § 6(d). Because the terms "unambiguously authorize" Amazon's conduct, there is "no room for the exercise of discretion," and "nothing to which to apply the covenant of good faith." *Goodyear Tire & Rubber Co. v. Whiteman Tire, Inc.*, 935 P.2d 628, 633 (Wash. Ct. App. 1997).

Cherry-picking from the Order, Plaintiffs also argue that Amazon breach the implied covenant because its actions were "tantamount to a price increase." Opp. at 13. But Plaintiffs ignore the rest of the Order, in which the Court concluded that "benefit removal and a price increase" are distinct. Order at 8. As the Court explained, "Amazon's introduction of ads to Prime Video and the attendant option to pay more to avoid them did not constitute a price increase, and therefore this premise of Plaintiffs' good faith claim necessarily fails." *Id.* at 11. Nothing in the AC or the Opposition changes that outcome.

## IV. Amazon Did Not Violate The WCPA.

The WCPA claim fails as before. In their Opposition, Plaintiffs do not dispute that they state no misrepresentation or omission theory. *See* Mot. at 13. Plaintiffs instead try to repackage their breach of contract claim, arguing that "the Video Terms confined Amazon's authority to modify benefits to specific circumstances *and* prohibited mid-subscription price increases." Opp. at 13-14. As explained above, this argument hinges on a misinterpretation of the contracts that the Court unequivocally rejected. *See, e.g.*, Order at 12 (Section 6(d) "contains a list of circumstances under which Amazon may modify the Service, but clearly does not limit Amazon's authority to act to *only* those circumstances."), 14 ("Amazon's introduction of advertisements into its Prime Video streaming service was not a price increase; it was benefit modification, contemplated and authorized by the parties' governing agreements.").

Plaintiffs fall back on the tired refrain that "customers who began and paid for an annual membership before Amazon's announcement that it would only offer ad-free service for an additional $2.99 monthly fee reasonably expected that Amazon would not increase the price for that same benefit midterm." Opp. at 13. The Court rejected that too: Plaintiffs' "'understanding' that Amazon would not modify the Prime Video service was *not* 'reasonable,' given the broad discretion" the parties' governing agreements "granted Amazon to do just that." Order at 14.

Citing *Greenberg v. Amazon.com, Inc.*, 3 Wn.3d 434, 553 P.3d 626 (2024), Plaintiffs argue that Amazon's conduct was "unfair" because Amazon implemented the ad-free upgrade "without sufficient warning to allow consumers the choice *not* to renew their subscription prior to the implementation of the price increase or without offering consumers an option to cancel their annual subscription and receive a *pro rata* refund was patently unfair." Opp. at 14. This argument fares no better. As the Washington Supreme Court explained in *Greenberg*, an act is unfair under the "substantial injury" test—the "most important" and prevailing standard for unfairness—when it causes "substantial injury to consumers," "which is not reasonably avoidable by consumers themselves" and "not outweighed by countervailing benefits to consumers or to competition." 3 Wn.3d at 456, 458. An injury is "reasonably avoidable if consumers have reason to anticipate the impending harm and the means to avoid it." *Id.* at 461 (citation omitted). In *Davis v. HSBC Bank Nev., N.A.*, the Ninth Circuit concluded that a consumer has "the means to avoid" the alleged harm (there, credit card fee) where they agree to terms (cardholder agreement) that "were enough to give a reasonable consumer 'reason to anticipate'" that possibility. 691 F.3d 1152, 1168-69 (9th Cir. 2012). Here too, Amazon fully disclosed that Prime benefits and the Prime Video service are subject to change, as well as its Prime refund policy. *See* Buckley Decl., Ex. A at 2; *id.*, Ex. C at 6-7. Thus, Plaintiffs had both "reason to anticipate" and the "means to avoid" the alleged injury by simply reading the applicable terms and choosing not to enroll in Prime if they were unacceptable.

Plaintiffs try in vain to distinguish *In re Amazon Service Fee Litigation*, No. 2:22-cv-00743-TL, 2024 WL 3460939 (W.D. Wash. Jul. 18, 2024) ("*Service Fee II*"). Opp. at 14-15. But *Service Fee II* and this case challenge the same underlying conduct: Amazon allegedly violated the WCPA by removing something that was previously free to Prime members (Whole Foods Market grocery delivery in *Service Fee II* and ad-free access to Prime Video here), charging a fee for that service (the delivery service fee in *Service Fee II* and the ad-free upgrade here), and "refusing to refund or permit members to cancel those subscriptions." 2024 WL 3460939, at *9. Plaintiffs cannot allege any unfair or deceptive conduct in either case. As Judge Lin explained, "the termination of free Whole Foods delivery and the lack of a refund were disclosed to Plaintiff

and to all Prime subscribers prior to their enrollment," such that any alleged harm was "reasonably avoidable." *Id.* The same reasoning applies here because Amazon's exercise of its fully disclosed contractual right is not unfair or deceptive. *See* Mot. at 13-14 (collecting cases).

**V. Plaintiffs Suffered No Cognizable Harm.**

The Opposition also fails to address Plaintiffs' lack of injury. Plaintiffs now admit that the Prime "'benefit' here [i]s the entire Prime Video Service, not that it did not feature ads," and "Amazon did not remove Prime Video as a benefit of Prime." Opp. at 6-7; AC ¶ 35. Plaintiffs' memberships could not have "lost value" where "Plaintiffs did not purchase access to 'ad-free Prime Video,' let alone an ad-free Prime Video that Amazon promised would remain ad-free." Order at 8. For the five Plaintiffs who chose not to pay for the ad-free upgrade, they have no conceivable claim to monetary harm. And the two Plaintiffs who voluntarily chose to pay for the ad-free upgrade caused their own "harm" (if any).

Plaintiffs at most allege that ads are "annoying" (AC ¶¶ 40, 45, 55), but "annoyance" and other "bad feelings" are not recoverable under the WCPA or any contractual claim. *See, e.g., Gaglidari v. Denny's Rests.*, 117 Wn.2d 426, 446, 815 P.2d 1362, 1373 (1991); *Street v. Amazon.com Servs., LLC*, No. 2:21-cv-0912-BJR, 2022 WL 3683811, at *5 (W.D. Wash. Aug. 25, 2022) (citation omitted).

**CONCLUSION**

Presumably recognizing that amendment would be futile, Plaintiffs do not seek that relief. Nor would further leave to amend be appropriate because Plaintiffs present "no new facts" or theories to overcome the shortcomings in their claims. *See Krainski v. State of Nev. ex rel. Bd. of Regents of Nev. Sys. of Higher Educ.*, 616 F.3d 963, 972 (9th Cir. 2010). Plaintiffs have now failed *three* times to articulate viable claims against Amazon. *See Yablonsky v. Cal. Dep't of Corrections & Rehabilitation*, No. 18-cv-1122-AGS, 2021 WL 2952934, at *3 (S.D. Cal. July 13, 2021) ("'[W]hen a pleader alleges and re-alleges the same theories in an attempt to cure pre-existing deficiencies,' the Court finds such a repeated failure to cure 'weigh[s] against granting the … amendment'") (citation omitted). The Court should dismiss this case with prejudice.

Dated: May 30, 2025

Respectfully submitted,

FENWICK & WEST LLP

By: /s/ Brian D. Buckley

Brian D. Buckley, WSBA No. 26423

Y. Monica Chan, WSBA No. 58900
401 Union Street, 5th Floor
Seattle, WA 98101
Telephone: 206.389.4510
Facsimile: 206.389.4511
Email: bbuckley@fenwick.com
mchan@fenwick.com

Jedediah Wakefield (admitted *pro hac vice*)
555 California Street, 12th Floor
San Francisco, CA 94104
Telephone: 415.875.2300
Facsimile: 415.281.1350
Email: jwakefield@fenwick.com

Irene Aguirre (admitted *pro hac vice*)
801 California Street
Mountain View, CA 94041
Telephone: 650.988.8500
Facsimile: 650.938.5200
Email: iaguirre@fenwick.com

*Attorneys for Defendant*
*AMAZON.COM, INC.*